IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

ELECTRONICALLY FILED
Oct 04 2017
U.S. DISTRICT COURT
Northern District of WV

TAMMY BARNETT,

    Plaintiff,

v.

ANTERO RESOURCES CORPORATION,

    Defendant.

Case No. 1:17-CV-167 (Keeley)

**JURY TRIAL DEMANDED ON ALL ISSUES**

## COMPLAINT

NOW COMES, Plaintiff, Tammy Barnett by and through her attorneys, David W. Frame, Esq., The Law Office of David Frame, and Christi Wallace, Esq., of Kraemer, Manes & Associates LLC, and files this complaint alleging as follows:

### I. Nature of the Action

1. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII), 42 U.S.C.A. § 2000e, *et seq* and the West Virginia Human Rights Act ("WVHRA"), W. Va. Code, § 5-11-1, *et seq.* Plaintiff was subjected to a hostile work environment and was wrongfully discharged because her husband is African-American.

### II. Jurisdiction and Venue

2. This action arises under the statutes cited in the preceding paragraph. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

3. Plaintiff is a resident and a citizen of West Virginia, and a substantial part of the events or omission giving rise to these claims occurred in Northern West Virginia, and, therefore, this action is within the jurisdiction of the United States District Court for the Northern District of West Virginia and venue is proper pursuant to 28 U.S.C. § 1391(b).

4. This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

### III. Parties

5. Plaintiff, Tammy Barnett ("Plaintiff"), is a West Virginia resident residing at 102 Rose Avenue, Clarksburg WV, 26301.

6. Defendant, Antero Resources Corporation ("Defendant"), is a Delaware corporation with its Principal Place of Business at 1615 Wynkoop Street, Denver, CO 80202. The location of Defendant where Plaintiff worked is at 535 White Oaks Blvd. Bridgeport, WV 26330.

### IV. Facts

7. Plaintiff began her employment with Defendant on July 7, 2015 as a Strategic Sourcing Agent.

8. Immediately following Plaintiff's hiring, on September 24, 2015, Plaintiff attended a charity walk with her husband that was sponsored by Defendant.

9. Plaintiff's husband is African-American.

10. Plaintiff is Caucasian.

11. Plaintiff introduced her husband to Al Schopp ("Mr. Schopp") and Michelle Woerner ("Ms. Woerner").

12. Upon introduction, Mr. Schopp immediately stated to Plaintiff's husband, while shaking hands, "Well, finally, there's the brother, how are you doing brother?"

13. Mr. Schopp then proceeded to put his arm around Plaintiff's husband's shoulder and said, "My brother."

14. Mr. Schopp asked Plaintiff's husband if Plaintiff liked working with Defendant. Plaintiff's husband responded she liked working there "just fine, I guess," and Mr. Schopp responded "OK."

15. After Defendant learned of Plaintiff's husband's race, Plaintiff was treated negatively.

16. A Wellhead RFP bid was sent on September 3, 2015 and was awarded on October 28, 2015.

   a. Plaintiff sent an email sending discrepancies in the Wellhead item descriptions to Project Mangers.

   b. Ms. Woerner told Plaintiff this, "pissed them (the project managers) off."

   c. Plaintiff was attempting to avoid questions that would need to be answered later.

   d. Plaintiff was simply doing her job.

   e. However, she was informed by Ms. Woerner that she had overstepped her bounds.

17. On October 13, 2015, Plaintiff learned Ms. Woerner and several other employees stated, "niggers should die," and made other racist remarks.

18. On November 9, 2015 Plaintiff, instant messaged Ms. Woerner asking if a work order was needed, and Ms. Woerner turned off her messaging and would not answer Plaintiff.

    a. Whenever Plaintiff asked questions, Ms. Woerner would scold Plaintiff loudly in front of others, stating Plaintiff did not know what she was doing and was not doing her job.

    b. Alternatively, if Plaintiff did not ask questions, in fear of embarrassment, Ms. Woerner would find something wrong with Plaintiff's work and scold her in front of others.

19. On November 10, 2015, during a meeting, Aaron Kunzler ("Mr. Kunzler"), a Construction Manager, asked Plaintiff if her husband was black. Plaintiff was shocked by this question. Mr. Kunzler said that a black guy was at the gym with his wife and the black guy mentioned that his wife worked in procurement at Antero. He then asked if Plaintiff's husband was at the Defendant's picnic to which Plaintiff said yes. Plaintiff was constantly being asked about her African American husband.

20. On November 17, 2015, Plaintiff moved into an office with her co-worker Emily Rollyson ("Ms. Rollyson")

    a. Plaintiff's desk was facing the wall.

    b. When Plaintiff asked why both desks were facing the wall, Ms. Woerner told Plaintiff it was so they could see what she was doing.

    c. Plaintiff's work was being heavily scrutinized.

    d. Every time Plaintiff tried to creatively and effectively contribute to the department, Ms. Woerner would shoot her ideas down. If Plaintiff showed the least little bid of knowledge more than Ms. Woerner, she would argue with Plaintiff to try to prove her wrong. Plaintiff was constantly bullied on all matters.

21. On December 8, 2015 Plaintiff attended MRC in Pennsylvania where Ms. Woerner was smoking by the door telling racial jokes.

22. On December 10, 2015, in a meeting with Ms. Woerner, Plaintiff was told Ms. Woerner had spoken with Mr. Schopp and that they felt Plaintiff was doing an unacceptable job.

   a. Ms. Woerner then told Plaintiff to get the fuck out, if she was not happy at Defendant.

23. On December 17, 2015, Plaintiff missed an email from Tim Culberson asking her to order a launcher and receiver. Upon finding out about this, Ms. Woerner was irate.

   a. Ms. Woerner asked Plaintiff why she missed the e-mail.

   b. Plaintiff explained she was looking at the e-mail from her phone at home and did not see it when she returned to work on Monday.

   c. Ms. Woerner stomped down the hall to her office and slammed the door.

   d. Plaintiff told her she was sorry for missing that e-mail and that nothing was delayed or put on hold because she missed it.

   e. Ms. Woerner stated that Plaintiff was messing things up and that she should just get the fuck out.

24. On February 18, 2016, Plaintiff spoke with Mr. Schopp about Ms. Woerner's behavior.

   a. Plaintiff stated she felt she was not being represented correctly by Ms. Woerner and felt she was going to be fired.

    b. Mr. Schopp stated no one was going to be fired and no one was trying to tarnish anyone's reputation.

    c. Nothing happened as a result of Plaintiff's complaint.

    d. Ms. Woerner's behavior was not corrected.

    e. Following Plaintiff's report of Ms. Woerner's behavior, she was retaliated against.

25. On March 4, 2016, Plaintiff was asked to meet with Mr. Schopp and Ms. Woerner.

    a. Plaintiff was informed she got one of the four poorest reviews in the company and she would not get a raise, only a $1,000.00 bonus.

    b. Plaintiff informed Mr. Schopp the review was a direct result of Ms. Woerner's retaliation and false representations.

    c. Mr. Schopp responded, "She (Ms. Woerner) wins!"

26. Plaintiff's evaluation did not accurate reflect her job performance.

    a. For example, the evaluation stated Plaintiff made mistakes in her work. However, Ms. Woerner stated she reviewed all of Plaintiff's work and if there were mistakes she would have pointed them out to Plaintiff so she could improve.

    b. Plaintiff was also critiqued for not being assertive. However, when Plaintiff was assertive it was seen as push back and not taking constructive criticism.

27. Plaintiff told Mr. Schopp if Ms. Woerner did not like her they could try to find Plaintiff another position outside of her department.

    a. Ms. Schopp responded Plaintiff would never leave his department and would never get a reference.

  b. Plaintiff was trying to address the discriminatory behavior by asking to move to a different department. Instead she was told no and further retaliated against.

28. Following Plaintiff's meeting with Mr. Schopp and Ms. Woerner on March 4, 2016, Plaintiff was given impossible deadlines and was set up to fail.

  a. On March 17, 2016 at 4:39PM, Ms. Woerner gave Plaintiff two of Ms. Rollyson's projects to finish because she and Ms. Woerner wanted to go home.

  b. On March 21, 2016 at 8:30AM, Ms. Woerner sent Plaintiff two projects, (the Edna and the Eddy projects) to get done in one hour for Mr. Kunzler.

29. Recently, in August 2016, Ms. Woerner had Plaintiff interview women for an administrative position.

  a. Jacob Cole, Ms. Rollyson and Plaintiff all thought an African-American woman would be great for the position.

  b. Ms. Woerner stated, "I think she would be loud. . . You know how they are . . . hey giirrlllll!"

  c. Plaintiff was now being asked to engage in discriminatory behavior by refusing this applicant because of her Race.

  d. Ms. Woerner clearly had an animus towards African Americans.

30. On November 8, 2016, Plaintiff heard Ms. Woerner and Msr Schopp discussing the client Extreme Plastic Plus.

31. On November 9, 2016, Plaintiff forwarded an email from Dustin Haddox, stating Mr. Schopp authorized Josh Wyckoff ("Mr. Wyckoff") to use Worthington Industries

regardless of the bid outcome, which is against company policy.  Plaintiff discovered the violation of policy.

32. On November 10, 2016, Mr. Schopp asked Plaintiff to come into his office, where Ms. Woerner was waiting. Mr. Schopp stated, "we have decided to move in another direction."

   a. Plaintiff's termination was wholly without cause.

   b. Mr. Schopp had violated company policy.  Plaintiff did nothing wrong but they used this as "cause" to terminate Plaintiff.

   c. Plaintiff was terminated because of her husband's Race.

### Count I
### Hostile Work Environment in Violation of Title VII, 42 U.S.C.A. § 2000e, *et seq* and the WVHRA, W. Va. Code, § 5-11-1, *et seq*

33. The preceding paragraphs are incorporated herein as if set forth at length.

34. Defendant's harassment was unwelcomed by Plaintiff, which is evident based on Plaintiff's complaints on February 18, 2016.

35. Defendant's discrimination was based on her husband's Race, which is clear given the comments made to Plaintiff by:

   a. Mr. Schopp on September 24, 2015, calling Plaintiff's husband, "brother."

   b. Ms. Woerner on October 13, 2015, stating, "niggers should die."

   c. Ms. Woerner on December 8, 2015, telling racial jokes.

36. The treatment Plaintiff suffered was sufficiently severe or pervasive to alter the conditions of employment and create an abusive environment.

37. There is a basis for imposing liability on the employer because Mr. Schopp and Ms. Woerner are both employees of Defendant and were both acting under the color of Defendant while their discriminatory actions took place.

38. The frequency, severity, humiliating characteristic of the discriminatory conduct unreasonable interfered with Plaintiff's work performance until she was terminated.

## Count II
**Retaliation in Violation of Title VII, 42 U.S.C.A. § 2000e, *et seq* and the WVHRA, W. Va. Code, § 5-11-1, *et seq***

39. The preceding paragraphs are incorporated herein as if set forth at length.

40. Defendant's discrimination was based on her husband's Race, which is clear given the comments made to Plaintiff by:

   a. Mr. Schopp on September 24, 2015, calling Plaintiff's husband, "brother."

   b. Ms. Woerner on October 13, 2015, stating, "niggers should die."

   c. Ms. Woerner on December 8, 2015, telling racial jokes.

41. Defendant's harassment was unwelcomed by Plaintiff, which is evident based on Plaintiff's complaints on February 18, 2016.

42. After Plaintiff reported the discriminatory behavior, she was retaliated against.

   a. On March 4, 2016, Plaintiff was informed she got one of the four poorest reviews in the company and she would not get a raise, only a $1,000.00 bonus.

      i. Plaintiff informed Mr. Schopp the review was a direct result of Ms. Woerner's retaliation and false representations. Mr. Schopp responded, "She (Ms. Woerner) wins!"

    b. Plaintiff asked Mr. Schopp if they could try to find Plaintiff another position outside of her department.

        i. Ms. Schopp responded Plaintiff would never leave his department and would never get a reference.

    c. Plaintiff was given impossible deadlines and was set up to fail.

    d. Plaintiff was also asked to engage in discriminatory behavior by refusing to hire an applicant because of her Race.

    e. Plaintiff was terminated without cause.

**Count III**
**Wrongful Termination in Violation of Title VII, 42 U.S.C.A. § 2000e, *et seq* and the WVHRA, W. Va. Code, § 5-11-1, *et seq***

43. The preceding paragraphs are incorporated herein as if set forth at length.

44. Plaintiff is Caucasian, but her husband is African American, and she was treated differently because of her relationship with her spouse.

45. Plaintiff was subjected to a hostile environment and retaliated against after reporting the discriminatory behavior of Defendant.

46. Plaintiff was subsequently terminated.

47. Plaintiff was performing her job duties at a level that met her employer's legitimate expectations at the time of her termination.

**Request for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the Defendant for the following:

    a. Loss of wages;

b.  Loss of future wages;

c.  Additional punitive damages and/or compensatory damages;

d.  Plaintiff's legal fees;

e.  Pre-judgment and continuing interest;

f.  Court costs; and

g.  Other such relief as the Court may deem just and proper,

Respectfully Submitted,

*/s/ David W. Frame*

David W. Frame
Local Responsible Attorney
Suite 2, Nationwide Bldg.
493 Washington Ave.
Clarksburg, WV. 26301
304-623-5690 (Phone)
888-613-9984 (eFax)
dwframe@framelaw.com


*/s/ Christi Wallace*

Christi Wallace, Esq.
Kraemer, Manes and Associates, LLC
U.S. Steel Tower
600 Grant Street, Suite 4875
Pittsburgh, PA 15219
cw@LawKM.com